

# THE ATTORNEY GENERAL
# OF TEXAS

## AUSTIN, TEXAS 78711

JOHN L. HILL
ATTORNEY GENERAL

October 26, 1976

The Honorable Bill Presnal
Chairman
Committee on Appropriations
Texas House of Representatives
Austin, Texas   78767

Opinion No. H-889

Re:  Whether a provider
of food services furnishing
services for or on behalf
of a State agency or sub-
division may utilize
imported beef or dairy
products.

Dear Representative Presnal:

You have requested our opinion regarding the application
of article 4476-6a and 4476-6b, V.T.C.S., to a caterer or
other provider of food service when services are provided for
or on behalf of a State agency or subdivision.  Article 4476-6a
provides in section 2:

> No state agency or subdivision may
> purchase beef, or any product consisting
> substantially of beef, which has been
> imported from outside the United States
> of America.

Likewise, article 4476-6b provides in section 2:

> No state agency or subdivision may
> purchase a dairy product that has been
> imported from outside the United States
> of America.

To ascertain the answer to your inquiry, we must necessarily
consider the permissible scope of articles 4476-6a and 4476-6b
under the United States Constitution.  In 1947 the United
States became a party to the Protocol of Provisional Application

of the General Agreement on Tariffs and Trade (GATT), 61 Stat.
pts 5-6 (1947), as amended 62 Stat. pt. 3, 3680 (1948).  Part
II, article III, paragraph 4 of GATT provides in pertinent part:

> The products of the territory of any
> contracting party imported into the
> territory of any other contracting party
> shall be accorded treatment no less
> favourable than that accorded to like
> products of national origin in respect
> of all laws, regulations and requirements
> affecting their internal sale, offering
> for sale, purchase, transportation,
> distribution or use . . . .   62 Stat.
> pt. 3, 3680  at 3681 (1948).

GATT is an executive agreement entered into pursuant to the
Reciprocal Trade Agreements Act of 1934, 19 U.S.C. § 1351.
Although not a formal "treaty" requiring the advice and consent
of the Senate under article 2, section 2 of the Constitution,
an executive agreement in the area of international relations,
such as GATT, is nonetheless the supreme law of the land
within the meaning of article 6 of the Constitution.  United
States v. Pink, 315 U.S. 203 (1942); United States v. Belmont,
301 U.S. 324 (1937).  Thus, any conflict between the terms
of GATT and State law must, under the supremacy clause, be
resolved in favor of GATT.  United States v. Pink, supra;
United States v. Belmont, supra.

The application of GATT's requirement of nondiscrimination
in international trade to purchases by governmental entities
is amplified in part II, article III, paragraph 8(a) of GATT,
as amended:

> The provisions of this article shall not
> apply to laws, regulations or requirements
> governing the procurement by governmental
> agencies of products purchased for govern-
> mental purposes and not with a view to
> commercial resale or with a view to use in
> the production of goods for commercial sale.
> 62 Stat. pt. 3, 3680 at 3681 (1948).

A distinction must, therefore, be made between products purchased by State agencies and subdivisions for their own ultimate use, and products purchased with a view to commercial resale or with a view to use in the production of goods for commercial sale.

No conflict exists between GATT and articles 4476-6a and 4476-6b, V.T.C.S., insofar as State agencies and subdivisions are directed to purchase only American beef and dairy products for their own "governmental purposes," and not with a view to commercial resale.  Thus, where a State agency or subdivision procures beef and dairy products to feed, for example, inmates of a correctional facility or a mental institution, and those beef and dairy products are not to be resold, articles 4476-6a and 4476-6b require that those goods must be American produced. It is our opinion that the same rule applies when a State agency contracts with a caterer or food service provider to supply beef or dairy products to the State for its own governmental purposes and not for commercial resale.

A different rule applies, however, when a State agency or subdivision undertakes the purchase of beef or dairy products for commercial resale.  Application of the "buy American" requirements of articles 4476-6a and 4476-6b to this situation would result in a conflict with GATT, and accordingly would fail under the supremacy clause.  Baldwin-Lima-Hamilton Corp. v. Superior Court, 25 Cal. Rptr. 798 (Dist. Ct. App. 1962).  See Jackson, The General Agreement on Tariffs and Trade in United States Domestic Law, 66 Mich. L. Rev. 249 (1967); Comment, GATT, the California Buy American Act, and the Continuing Struggle Between Free Trade and Protectionism, 52 Calif. L. Rev. 335 (1964); Comment, California's Buy-American Policy:  Conflict with GATT and the Constitution, 17 Stan. L. Rev. 119 (1964).  See also Bethlehem Steel Corp. v. Board of Commissioners, 80 Cal. Rptr. 800 (Dist. Ct. App. 1969).

Although we find that articles 4476-6a and 4476-6b may not be constitutionally applied in cases involving purchases by State agencies or subdivisions when products are to be commercially resold, it is our obligation to uphold those articles insofar as they can be given effect without offending the Constitution.  V.T.C.S. art. 11a.  As previously stated,

GATT provides no obstacle to Texas' determination to purchase only American-produced beef and dairy products when those goods are purchased for governmental purposes and not for commercial resale.  Likewise, in the absence of congressional action, the Commerce Clause of the United States Constitution, article I, section 8, clause 3, presents no obstacle to such a State policy in the purchase of goods for its own use. Hughes v. Alexandria Scrap Corp., 96 S. Ct. 2488 (1976).  We perceive no conflict between this State policy and the general power of the federal government to conduct international relations, in view of GATT's specific reservation of the right of governmental bodies to make such discriminations, cf. United States v. Pink, supra; United States v. Belmont, supra, and in view of the absence of any contrary federal policy.  See 41 U.S.C. § 10a-d.  The application we give to articles 4476-6a and 4476-6b is consistent with that given to the California Buy American Act through the opinions of that State's Attorney General.  40 Ops. Cal. Att'y Gen. 65 (1962); 37 Ops. Cal. Att'y Gen. 156 (1961); 36 Ops. Cal. Att'y Gen. 147 (1960); 34 Ops. Cal. Att'y Gen. 302 (1959).

### S U M M A R Y

Articles 4476-6a and 4476-6b, V.T.C.S., require that no State agency or sub-division may purchase beef or dairy products imported from outside the United States when purchasing those goods for governmental purposes and not for com-mercial resale.  This policy applies to the purchase of beef and dairy products by State agencies or subdivisions from caterers and other food service providers, when the products are purchased for governmental purposes and not for commercial resale.

Very truly yours,

JOHN L. HILL
Attorney General of Texas

p. 3745

APPROVED:

DAVID M. KENDALL, First Assistant

C. ROBERT HEATH, Chairman
Opinion Committee

jwb